IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM TAYLOR,<br>　　Plaintiff, | :<br>:<br>: | |
| v. | : | CIVIL ACTION NO. 24-CV-2424 |
| CO 1 DUNSTON, *et al.*,<br>　　Defendants. | :<br>:<br>: | |

**MEMORANDUM**

**GALLAGHER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**AUGUST 20, 2024**

　　*Pro se* Plaintiff William Taylor, a prisoner currently incarcerated at SCI Phoenix, asserts claims against an SCI Phoenix correctional officer and the Commonwealth of Pennsylvania. The claims relate to an altercation between Taylor and the correctional officer, and an alleged false disciplinary report lodged against Taylor in response to the altercation. Taylor seeks leave to proceed *in forma pauperis* and a temporary restraining order. For the following reasons, the Court will grant Taylor leave to proceed *in forma pauperis*, deny his request for a temporary restraining order, and dismiss his Complaint.

**I.　　FACTUAL ALLEGATIONS**[1]

　　The facts in Taylor's Complaint begin on March 17, 2024, when Defendant "CO-1 Dunston" told Taylor that yard time was over. (Compl. at 1.) When Taylor responded that it was only 4:25 p.m. and that yard time was not over, Dunston and Taylor "had words." (*Id*.) Dunston told Taylor that he did not care who Taylor was, that Dunston "goes home at night" and that Taylor, who is a prison "lifer," has to stay there. (*Id*.) When Taylor "jumped at" Dunston

---

[1] The facts are taken from Taylor's Complaint (ECF No. 1), which consists of four handwritten pages. The Court adopts the pagination supplied by the CM/ECF docketing system.

through the yard cage, Dunston "got mad" and spit on Taylor. (*Id*. at 1-2.) Dunston then "started to act as [if] he was [going to] open the yard cage to fight and/or do harm to [Taylor]." (*Id*. at 2.) CO-1 Simmons stopped Dunston from opening the cage. (*Id*.) Sergeant Swiney was then called to "remove" Dunston so that Taylor could be escorted back to his cell. (*Id*.) Duston spit on Taylor again in Swiney's presence. (*Id*.) After the altercation, Dunston wrote up an allegedly false misconduct report on Taylor, stating that Taylor had spit on Dunston. (*Id*.) The false report caused Taylor to suffer distress, lose his ability to use his electronics, and have his clemency review be placed "in jeopardy." (*Id*.) As a result of the incident with Dunston, Taylor "tried to kill himself" by cutting his wrist, and continues to suffer mental anguish. (*Id*. at 2-3.)

Based on these facts, Taylor alleges constitutional claims and state law claims for assault and battery. For relief, he seeks money damages (Compl. at 3), and a temporary restraining order, which directs that Dunston and "all other persons acting in concert" with him be "restrained from being around" Taylor at SCI Phoenix (ECF No. 2).

## II.     STANDARD OF REVIEW

The Court grants Taylor leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[2] Because he is a prisoner, Taylor will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

2

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Additionally, the Court must review any claims over which subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). As Taylor is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.     DISCUSSION

#### A.     Constitutional Claims

Although Taylor labeled his claims as "assault and battery tort claims" (*see* Compl. at 1), liberally construing the Complaint the Court understands Taylor to also assert a possible Eighth Amendment excessive force claim based on allegations that Dunston verbally threatened him and spit on him, and a Fourteenth Amendment due process claim based on the allegedly false

3

disciplinary report lodged against Taylor. Constitutional claims are brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Initially, the Court addresses Taylor's claims against the Commonwealth of Pennsylvania. States are not considered "persons" who are liable under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity for claims under § 1983. *See* 42 Pa. Cons. Stat. § 8521(b). Accordingly, Taylor's claims against the Commonwealth of Pennsylvania must be dismissed because those claims are not plausible.

Taylor has also not stated a plausible Eighth Amendment excessive force claim. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

Taylor alleges that after challenging Dunston's command that yard time was over, the two "had words," after which Dunston acted as though he was going to harm Taylor and then spit on him. However, verbally threatening a prisoner, even if offensive, does not give rise to an independent constitutional violation. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d

Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."). Similarly, offensive gestures such as spitting do not amount to an Eighth Amendment violation. *See DeMallory v. Cullen*, 855 F.2d 442, 444 (7th Cir. 1988) ("[A] correctional officer spitting upon a prisoner does not rise to the level of a constitutional violation."); *Green v. White*, No. 20-4211, 2021 WL 1979434, at *3 (E.D. Pa. May 18, 2021) (holding that allegations of defendant "poking [plaintiff] in the face with pointed fingernails and spitting at him" did not state an excessive force claim); *Estrada v. Litz*, No. 21-01955, 2023 WL 3735071, at *1-2 (M.D. Pa. Feb. 13, 2023), *report and recommendation adopted*, No. 21-1955, 2023 WL 3727513 (M.D. Pa. May 30, 2023) ("A single instance of a correctional officer spitting in an inmate's face does not constitute excessive force in violation of the Eighth Amendment."); *Lorenzano v. Grove*, No. 17-53, 2017 WL 1830032, at *3 (M.D. Pa. May 5, 2017) ("Plaintiff's allegation that Grove spit on him while yelling is simply insufficient by itself to set forth a viable claim that the inmate was subjected to a excessive force in violation of the Eighth Amendment."). Accordingly, Taylor's excessive force claim will be dismissed.

Taylor has also not stated a plausible Fourteenth Amendment due process claim. His claim appears to be based on allegations that Dunston falsely charged him with disciplinary infractions, which caused Taylor to lose his ability to use his electronic devices and jeopardized his clemency review. In the prison context, "[d]ue process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the

conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). Significantly, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Taylor's due process claim also fails to state a plausible claim because Taylor has not sufficiently alleged the deprivation of a protected liberty interest. Taylor states that Dunston's false report caused him to lose his electronic device privileges and caused his clemency review to be placed in jeopardy. However, neither deprivation qualifies as a constitutionally protected liberty interest. *See Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67-68 (2009) ("[N]oncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is entitled as a matter of state law."); *Rosa-Diaz v. Oberlander*, No. 22-239, 2023 WL 6795805, at *2-3 (W.D. Pa. Oct. 13, 2023) (dismissing due process claim and explaining that because "under Pennsylvania law, the parole board has vast discretion to grant or deny parole," the plaintiff "lacks any constitutionally protected liberty in being paroled"); *id*. at *3 (holding that the plaintiff's loss of "telephone privileges, access to radio, [and] access to television and gaming devices," did not amount to a due process violation because these "inconveniences do not involve 'atypical and significant hardship' as compared to

6

the ordinary incidents of prison life, and prisoners generally have no recognized liberty interest in particular programming"). Accordingly, Taylor's due process claim based on the loss of his electronic device privileges and alleged impact on his clemency review must also be dismissed.

### B. State Law Claims

Taylor also asserts assault and battery claims under Pennsylvania state law. Because the Court has dismissed Taylor's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over civil actions between citizens of different States where the amount in controversy exceeds $75,000. Complete diversity is required, meaning that "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006); *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015). An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain. *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Although Taylor does not allege his citizenship, he lists a Pennsylvania address for himself as well as for Dunston. Thus, it appears that diversity jurisdiction is lacking over this action. Accordingly, Taylor's state law assault and battery claims will be dismissed without prejudice for lack of subject matter jurisdiction.

### C. Temporary Restraining Order

Taylor requests a temporary restraining order directing that Dunston and other unnamed prison officials "acting in concert" with Dunston be "restrained from being around [Taylor]" or taking his property – presumably a reference to the tablet. (ECF No. 2.) Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "The standards

for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).

      Taylor asks that the Court order that Dunston and unidentified other prison officials be restrained from being "being around" Taylor or taking his property. However, as set forth in this Memorandum, Taylor has not established that he is likely to succeed on the merits of his constitutional claims. Moreover, Taylor's request to be kept away from prison officials at SCI Phoenix "goes directly to the manner in which the DOC operates its prisons" and thus any injunctive relief in this form "would substantially harm the administration of [] prisons." *Abraham v. Danberg*, No. 08-311, 2009 WL 3615007, at *3 (D. Del. Nov. 2, 2009) ("The federal

courts are not overseers of the day-to-day management of prisons, and the court will not interfere in the DOC's determination where to place its correction officers within each institution."). Accordingly, Taylor's request for a temporary restraining order, or for any other preliminary injunctive relief, will be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Taylor leave to proceed *in forma pauperis*, deny his request for a temporary restraining order, and dismiss his Complaint. Taylor's constitutional claims will be dismissed with prejudice and his state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. No leave to amend will be granted, since an attempt to do so would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile."). An appropriate Order dismissing this case will be entered separately.

BY THE COURT:

*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**